```
01
02
03
04
05
```

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| JUDY M. SUIT, ) | |
| ) | CASE NO. C10-1389-JLR |
| Plaintiff, ) | |
| ) | |
| v. ) | REPORT AND RECOMMENDATION |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Judy M. Suit appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

### I. FACTS AND PROCEDURAL HISTORY

Plaintiff was born in 1951 and was 50 years old on her alleged onset date of disability. (Administrative Record ("AR") at 130.) She has a high school education. (AR at 169.) Her

REPORT AND RECOMMENDATION
PAGE -1

past work experience includes employment as a cashier, an appointment clerk, and a collator. (AR at 34, 44, 165.)  Plaintiff was last gainfully employed on November 30, 2005. (AR at 164.)

Plaintiff asserts that she is disabled due to arrhythmia with a pacemaker implantation, left elbow injury, fatigue, low back and hip pain, and left shoulder impingement. (AR at 30-32, 164.)  She asserts an onset date of October 18, 2001. *Id.*

The Commissioner denied plaintiff's claim initially and on reconsideration. (AR at 81-84, 87-89.)  Plaintiff requested a hearing, which took place on July 11, 2008. (AR at 36-76.)  The ALJ heard testimony from plaintiff, plaintiff's husband James L. Suit, and vocational expert Robert G. Aslan. *Id.*  On August 26, 2008, the ALJ issued a decision finding plaintiff not disabled. (AR at 28-35.)

Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council (AR at 12-14) making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On August 27, 2010, plaintiff timely filed the present action challenging the Commissioner's decision. (Dkt. No. 3.)

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.  DISCUSSION

As the claimant, Ms. Suit bears the burden of proving that she is disabled within the meaning of the Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines

disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether a claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). The ALJ found plaintiff has not engaged in substantial gainful activity since October 18, 2001, the alleged onset date. (AR at 30.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff has the following severe impairments: arrhythmia with implantations of a pacemaker. *Id*. Step three asks whether a claimant's impairment or combination of impairments meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt P, App. 1. The ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (AR at 31.) If the claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff has the RFC to perform light work with some additional restrictions. (AR 34.) If the claimant is able to perform her past relevant work, she is not disabled; if the

opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099-1100. The ALJ found plaintiff is capable of performing her past relevant work as a cashier or an appointment clerk. (AR at 34.) The ALJ concluded plaintiff has not been under a disability from October 18, 2001, through the date of the decision. *Id*.

Plaintiff argues that the ALJ failed to properly identify all of her severe impairments, erred in assessing her credibility, erred in rejecting her husband's lay testimony, and erred in posing a hypothetical to the vocational expert. (Dkt. No. 14.) She requests remand for further administrative proceedings. *Id*. at 21. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed. (Dkt. No. 16.) For the reasons described below, the Court agrees with the plaintiff.

A.   <u>Step Two</u>

Step two of the sequential evaluation process requires a claimant to make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). A diagnosis alone is not sufficient to establish a severe impairment. Instead, a claimant must show that her medically determinable impairments are severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence

establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id*.

In this case, the ALJ found that plaintiff had the following severe impairment: arrhythmia with implantations of a pacemaker. (AR at 30.) Plaintiff assigns error to the ALJ's finding that her left elbow impairment was not severe. (Dkt. 14 at 11-12.) She argues that the ALJ had a duty to develop the medical record because she did not have the financial ability to obtain medical records to support her claim. *Id*. At 12. She also contends that the ALJ failed to identify all of her impairments at step two, including her fatigue, low back and hip pain, and left shoulder impingement. (Dkt. No. 14 at 8-12.)

    1. <u>Left Elbow</u>

The medical evidence shows that plaintiff was injured on July 6, 2007, when she fell down some stairs at a movie theatre and dislocated and fractured her left elbow. (AR at 31, 369.) Plaintiff underwent reduction of the elbow and her arm was placed in a posterior splint. (AR at 31, 401.) Three days after her left elbow fracture-dislocation, her medical records indicate that she was "fairly active," and she was advised that her elbow can re-dislocate fairly easily unless immobilized. (AR at 401.) Plaintiff elected to proceed with a long arm cast, which was removed twelve days later. (AR at 399, 401.) At plaintiff's seven-week follow-up examination, she reported that she had missed some of her physical therapy sessions. (AR at 395.) Plaintiff was "advised that it is very important for her to attend physical therapy or she

01  may not regain her range of motion." *Id*.

02  At plaintiff's eleven-week follow-up examination, plaintiff reported that she had
03  discontinued physical therapy as she felt like she had not made any improvement for several
04  weeks, but that she continues to experience "ongoing stiffness and a sense of abnormal catching
05  as she flexes her arm." (AR at 31, 393.) Range of motion of her elbow showed lack of full
06  extension by 12 degrees and flexion by 8 degrees. *Id*. She was able to demonstrate full
07  pronation, but lacked full supination by 10 degrees. *Id*. Her doctor recommended either a CT
08  or MRI examination to evaluate for intraarticular loose body. (AR at 394.) Plaintiff indicated
09  she "feels that she needs time to rest her arm and see if it will get a little better on its own before
10  considering" more "aggressive treatment." *Id*. Her doctor agreed that her approach seemed
11  reasonable and would not cause any harm. *Id*. Her doctors did not impose any limitations.
12  *Id*. The records note that plaintiff would follow-up in approximately two months "to evaluate
13  her progress and see if she is continuing to improve or having increased difficulties." *Id*.
14  Plaintiff did not seek any additional treatment for her elbow.

15  The ALJ found "no objective medical evidence to show that [plaintiff's elbow]
16  impairment is more than transient or that it causes significant vocational limitations." (AR at
17  31.) In addition, the ALJ determined that plaintiff's elbow impairment did not meet the one
18  year durational requirement, and, therefore, was non-severe. *Id*. Plaintiff argues that the ALJ
19  erroneously determined that her elbow injury was transient and did not meet the twelve month
20  durational requirement. (Dkt. No. 14 at 12.) Plaintiff contends that she testified at the
21  hearing that her elbow injury still causes pain and limits the use of her arm, and that she has
22  been unable to afford medical care. (Dkt. No. 14 at 12.) She contends that this triggered the

ALJ's duty to develop the record by obtaining a consultative medical evaluation because she did not have the financial ability to seek medical records to support her claim.  *Id.*

The ALJ has a "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"  *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  This duty "is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability."  20 C.F.R. § 416.912(e); *see also* SSR 96-5p; *Thomas*, 278 F.3d at 958.

Plaintiff's argument that the ALJ was required as a matter of law to obtain medical evidence to support her claim attempts to shift the burden to the ALJ and is without merit.  As the Commissioner argues, the ALJ's duty to develop the record is not triggered by a claimant's inability to pay for medical treatment, but by ambiguous medical evidence, or by an ALJ's finding that the record is inadequate to allow for proper evaluation.  (Dkt. No. 16 at 4-6.)  In this case, the medical record was neither ambiguous nor inadequate.  Rather, the ALJ's conclusion that plaintiff's elbow impairment is transient and does not cause significant vocational limitations appears to be supported by substantial evidence.  Accordingly, the ALJ's duty to develop the record was not triggered and the ALJ did not err in this respect.

        2.    <u>Fatigue</u>

Plaintiff also challenges the ALJ's failure to find her fatigue a severe impairment.  (Dkt. No. 14 at 8-9.)  She points to the April 2007 stress test which was stopped because of moderate to severe dyspnea and fatigue.  The Commissioner, however, correctly points out that the ALJ found plaintiff's fatigue was a symptom of her arrhythmia and pacemaker

implantation, and thus properly considered her fatigue at step two.  (Dkt. No. 16 at 6-8.)

The medical records show that after plaintiff's pacemaker was implanted on October 18, 2001, she had no further episodes of light-headedness or near syncope, but she did report increased fatigue at a pacemaker check on January 8, 2003.  (AR at 235, 285.)  Plaintiff also reported feeling fatigue during a pacemaker check on March 8, 2006, and during a stress test on April 6, 2007.  (AR at 354, 403.)  Aside from noting plaintiff's reports of fatigue, plaintiff's treating physicians did not identify any restrictions or limitations attributable to her fatigue.  *See id.*  The January 8, 2003, chart note states that "[plaintiff] will follow up with Dr. Martonick later today regarding her fatigue and also for her lipid followup."  (AR at 235, 285.)  However, subsequent chart notes do not show any follow-up care regarding fatigue.

In his discussion of plaintiff's arrhythmia and pacemaker, the ALJ noted that plaintiff complained about general fatigue in January 2003 and March 2006, but that it was reported that plaintiff was doing well and the pacemaker was working well.  (AR at 31.)  The ALJ also noted that the stress electrocardiogram performed in April 2007, showed that plaintiff met the New York Heart Association Functional Class I heart function, which indicates that a patient has cardiac disease "but without resulting limitation of physical activity," and that "[o]rdinary physical activity does not cause undue fatigue, palpitation, dyspnea or angina pain."  NEW YORK HEART ASSOC., NOMENCLATURE AND CRITERIA FOR DIAGNOSIS OF DISEASES OF THE HEART AND GREAT VESSELS (Little, Brown & Co, 9th ed. 1994).  (AR at 31-32.)  Thus, contrary to plaintiff's contention, the stress test results refute the existence of any limitations from fatigue.

//

Furthermore, as the Commissioner argues, even if the ALJ erred, any such error was harmless because the ALJ accounted for all of the symptoms and limitations caused by plaintiff's arrhythmia and pacemaker in his RFC determination at step four. (Dkt. No. 16 at 7.) As the Commissioner asserts, state agency physician Robert Bernardez-Fu, M.D., reviewed the medical records and opined that plaintiff was capable of performing light work. (AR at 361.) The ALJ gave Dr. Bernardez-Fu's opinion substantial weight, finding that no medical opinions or findings contradicted his opinion. (AR at 33-34.) The ALJ stated, "a review of the record in this case reveals no restrictions recommended by any treating doctor. The cardiologists who treated the claimant at the Everett Clinic, noted that the pacemaker was highly effective and the claimant was no longer experiencing symptoms of syncope or arrhythmias." (AR at 33.) The ALJ found "the lack of any stated limitations by a treating or examining source is strongly supportive of this decision." *Id*. Plaintiff does not challenge this finding. After reviewing the record and the ALJ's RFC finding, the undersigned finds no errors regarding his treatment of plaintiff's fatigue. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (concluding that any failure to list bursitis as severe at step two was harmless because the ALJ adequately considered the claimant's bursitis in his RFC determination).

### 3. Back and Hip Pain

Plaintiff also argues that the ALJ erred by not concluding at step two that she was severely impaired by back and hip pain. (Dkt. No. 14 at 10.) While plaintiff acknowledges that she did not seek medical care for this condition, she asserts that she testified to the physical limitations they cause her and that the ALJ did not fulfill his duty to thoroughly evaluate the record. *Id*. In response, the Commissioner argues that plaintiff bears the burden of

establishing the existence of a severe impairment, which must be shown not only by plaintiff's statements regarding her symptoms but also from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical laboratory diagnostic techniques." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (finding the opinion of claimant's neurologist fell "far short of what is required to establish an impairment" because it was based solely on the claimant's own perception or description of his symptoms.) *See also* 20 C.F.R. §§ 404.1528(a), 416.928(a) ("Your statements alone are not enough to establish that there is a physical or mental impairment.").

As argued by the Commissioner, plaintiff fails to demonstrate error at step two. Symptoms alone are not sufficient to establish a medically determinable impairment. *See Ukolov*, 420 F.3d at 1005. While plaintiff reported to a walk-in clinic in 2000 that she had low back pain, there is no evidence that this condition significantly limited her ability to perform basic work activities. The Court declines to find error in the step two assessment of plaintiff's back and hip pain.

### 4. Left Shoulder Impingement

The medical evidence shows that plaintiff injured her left shoulder in March 2006, after tripping and falling down three steps at her home. (AR at 355.) An x-ray showed no fracture. (AR at 355, 357.) Her doctor diagnosed her with a rotator cuff injury and prescribed diclofenac for her left shoulder pain. *Id*. He also gave her a manual entitled "Shoulder Owner's Manual," and instructed her to follow up with him within a week to ten days. *Id*. In August and September 2007, when she was receiving physical therapy for her left elbow injury, plaintiff complained of having continued left shoulder discomfort. (AR at 382-84.) Her

01　physical therapist recommended performing rotator cuff and general shoulder strengthening
02　exercises.  *Id*.  During a follow-up examination on September 21, 2007, her doctor noted that
03　plaintiff's shoulder was tender in the subacromial space and that she had pain with
04　impingement maneuver.  (AR at 393.)  He diagnosed her with "[l]eft shoulder pain, most
05　consistent with impingement although cannot rule out the possibility of rotator cuff tear."  *Id*.
06　He recommended a number of treatment options, including physical therapy, a cortisone
07　injection, and/or subacromial decompression rotator cuff repair.  *Id*.  Plaintiff indicated that
08　"she would prefer to live with the discomfort she has in the shoulder," but that "[s]he may
09　reconsider this if it continues to be painful or she has increasing problems."  *Id*.  Plaintiff
10　testified at the hearing that her left shoulder injury prevents her from lifting her arm above her
11　shoulder.  (AR at 48, 53.)

12　　　　The ALJ did not address plaintiff's left shoulder impingement at step two.  Plaintiff
13　asserts that her left shoulder impingement causes more than a minimal limitation on the
14　functional use of her left arm with lifting and reaching above her shoulder, and that the ALJ's
15　failure to consider her shoulder injury constitutes reversible error.  (Dkt. No. 14 at 9-10.)  The
16　Commissioner argues that any error was harmless because plaintiff failed to establish that her
17　left shoulder impairment causes more than a minimal effect on her ability to perform
18　work-related activities required by her past relevant work.  (Dkt. No. 16 at 9-10.)

19　　　　The Ninth Circuit has concluded that any error at step two is harmless when an ALJ
20　accounts for impairment-related limitations in subsequent steps of the disability evaluation.
21　*See Lewis*, 498 F.3d at 911.  Here, however, there is no indication that the ALJ considered the
22　impact of plaintiff's left shoulder impingement at later steps.  Although the ALJ relied on Dr.

Bernardez-Fu's Physical Residual Functional Capacity Assessment, his assessment dated September 20, 2006, predates plaintiff's 2007 medical records which show an ongoing shoulder impairment. Furthermore, although Dr. Bernardez-Fu referenced plaintiff's shoulder impairment, he did not include any shoulder related limitations in his RFC assessment because at the time of his assessment the medical records showed that "[plaintiff] had a fall which was durational with no fractures or long term sequelae." (AR 361.) Moreover, the ALJ made no effort to address the subsequent medical evidence in his decision, thus it is unlikely the ALJ considered plaintiff's shoulder impairment alone or in combination with her other impairments at subsequent steps in the evaluation process. Because the ALJ included no limitations in his assessment of plaintiff's RFC stemming from plaintiff's shoulder impingement, it is impossible to gauge what impact a finding of severity would have had on the RFC determination. Accordingly, the Court finds the ALJ's error in failing to address plaintiff's shoulder impingement was not harmless, and this case must be remanded for consideration of plaintiff's shoulder impingement.

      B.    <u>Credibility</u>

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). *See also Thomas*, 278 F.3d at 958-59. In finding a social security claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "We require the ALJ to

build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, there was no evidence of malingering, therefore, the ALJ was required to provide clear and convincing reasons supported by the record for discounting plaintiff's statements regarding her limitations. In his evaluation of plaintiff's testimony, the ALJ first referenced the fact that on the function report provided in July 2006, "[plaintiff] indicated that she could walk one to two blocks before needing to rest two to three minutes, and she could lift up to 30 pounds. She also stated that she went camping two to three times per year, and her hobbies included quilt making." (AR at 33, 196-203.) The ALJ found such level of activity to be consistent with the light exertional level of work.[1] (AR at 33.) However, the ALJ noted that at the hearing, plaintiff testified that "she could walk a mile, but would have to rest for half an hour, and she could lift no more than 10 pounds." *Id*. He also noted that plaintiff testified that "since her pacemaker was implanted she has heart palpitations and shortness of breath." *Id*.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

The ALJ found these allegations were unsubstantiated by the medical evidence, which showed that plaintiff reported no such problems to her physician and that there has been no medical evidence showing any deterioration in plaintiff's condition since July 2006. *Id*. The ALJ found "the evidence does not show that the claimant is limited to the extent that she has alleged." *Id*. In addition, the ALJ mentioned the record shows that plaintiff did engage in work activity after the alleged onset date. *Id*. The ALJ found, "[a]lthough that work activity did not constitute disqualifying substantial gainful activity, it does indicate that [plaintiff] has been capable of engaging in some type of work activity." *Id*. Plaintiff argues that the ALJ failed to give sufficient reasons for discounting her statements regarding her functional limitations in determining RFC. (Dkt. No. 14 at 12.)

Because this case is being remanded for the reasons detailed above, the Court eschews a detailed analysis of the ALJ's credibility determination. In light of the fact that the Court has found that the ALJ failed to properly consider medical evidence and testimony relating to plaintiff's left shoulder impairment, and because credibility determinations are inescapably linked to conclusions regarding medical evidence, 20 C.F.R. § 404.1529, the ALJ's credibility finding is also reversed and the issue remanded. After re-evaluating the medical evidence regarding plaintiff's shoulder impairment, the ALJ will be in a better position to evaluate plaintiff's credibility regarding her functional limitations. On remand, the ALJ should properly assess plaintiff's testimony, and provide clear and convincing reasons for rejecting it should such a conclusion be warranted.

    C.    <u>Lay Witness</u>

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

to work is competent evidence. *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987). The ALJ can reject the testimony of lay witnesses only by giving reasons germane to each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *see also Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) ("[L]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

Plaintiff contends that the ALJ failed to provide germane reasons for rejecting the testimony of her husband, James A. Suit. (Dkt. No. 14 at 15-17.) The ALJ gave Mr. Suit's testimony "little weight," finding it was largely based on plaintiff's self-reports and was not consistent with the medical record. (AR at 34.) The Commissioner apparently concedes that the ALJ erred because Mr. Suit testified based on his observations not plaintiff's self-reports, but argues that Mr. Suit's testimony was contradicted by the medical evidence. (Dkt. No. 16 at 13-14.)

"One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Lewis*, 236 F.3d at 511 (citing *Vincent v. Heckler,* 739 F.2d 1393, 1395 (9th Cir. 1984)). Here, however, the ALJ did not identify any inconsistencies between Mr. Suit's statements and the record. The ALJ's statement thus provides no effective basis for judicial review. The Commissioner's *post hoc* explanations are insufficient to cure the ALJ's error. *See, e.g., Ceguerra v. Sec'y of Health & Human Serv.*, 933 F.2d 735, 738 (9th Cir. 1991)("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency."). On remand, the ALJ should reevaluate the lay witness testimony of Mr. Suit in light of the applicable record and specifically identify any conflicting evidence.

REPORT AND RECOMMENDATION
PAGE -16

### D. Vocational Expert Testimony

In posing a hypothetical to a vocational expert, the ALJ must accurately reflect all of the claimant's limitations. *Embrey v. Bowen*, 849 F.2d 418, 422-24 (9th Cir. 1988). In order for the vocational expert's testimony to constitute substantial evidence, the hypothetical posed must "consider all of the claimant's limitations." *Andrews*, 53 F.3d at 1044. The ALJ is not required to include limitations for which there is no evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

Because the hypothetical questions posed to the vocational expert were based upon the faulty determination of plaintiff's severe impairments and RFC, the vocational expert's answer cannot serve as substantial evidence that plaintiff has the RFC to perform her past relevant work. As a result, the questions posed to the vocational expert and his responses are legally deficient and of no evidentiary value. *Robbins v. SSA*, 466 F.3d 880, 886 (9th Cir. 2006). On remand, the ALJ should properly evaluate the evidence in accordance with appropriate legal standards and incorporate them into a hypothetical to the vocational expert.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. In particular, the ALJ should reevaluate the medical evidence, reevaluate plaintiff's credibility, articulate specific findings for rejecting the testimony of the lay witness, and hear testimony from a VE concerning the full vocational impact of all of plaintiff's impairments based on, among other things, a reassessment of plaintiff's RFC. This testimony shall include answering a hypothetical that takes into account all of plaintiff's limitations.

01  With this information, the ALJ should then apply all appropriate steps of the sequential
02  evaluation process to determine whether Plaintiff's severe impairments render him disabled for
03  purposes of Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f.
04  A proposed order accompanies this Report and Recommendation.

05  DATED this <u>25th</u> day of April, 2011.

                                        /s/ Mary Alice Theiler
                                        Mary Alice Theiler
                                        United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -18